First case this afternoon is case number 417-0832, the people of the state of Illinois versus Heather Lamie. And for the appellant, we have Mr. Rinker, is that correct? And then we have Mr. McNeil for the people. You may proceed, counsel. May it please the court, your honors, Mr. McNeil. Once again, my name is Josh Rinker and I represent the appellant Heather Lamie. Your honors, the first issue that I'd like to address to the court here today involves the undisputed facts related to trial counsel's failure to discuss a lesser included offense of involuntary manslaughter with my client. Your honor, the trial record will establish that at the course of the evidentiary hearing, there was an admission from defense counsel as well as corroborated by my client, Heather, that no discussion was had regarding whether to request this lesser included instruction. Now certainly we recognize that there's some factual differences between our argument on involuntary manslaughter and second degree, so I wish to address them separately if the court would allow. Your honors, it's our contention that People v. Brocksmith, the Illinois Supreme Court clearly held that the decision whether or not to request a lesser included offense instruction is a decision for the defendant to make. That if the court was to determine that that decision was not made by the defendant, that it would ultimately warrant reversal. In our briefs, we set forth the case of People v. Williams out of the First District, which we believe is the case that the court should follow in deciding how to analyze this particular issue. In Williams, the First District clearly held that if the record is clear that the decision was not made by the defendant, then ultimately it would warrant reversal under Brocksmith without even considering the inefficiency issue from there on. We believe that the record is clear with respect to that particular issue and would ask the court to make that finding here today. Now ultimately, the trial court as a part of its order here stated that essentially whether or not the discussion took place, it ultimately didn't matter. And it kind of divided its ruling into two different facets or reasons why. One reason was it said that essentially the record would establish that my client had asserted her innocence from the very beginning and that because she asserted her innocence, it didn't make sense for trial counsel to discuss with her these lesser included offenses through the course of the trial. Counsel, is there a difference between the defendant making the decision versus counsel making the decision or no decision being made at all? Yes. I believe that what is required is that the defendant be the one to make the decision. If the defendant is not the one to make that decision, Your Honor, then I think Brocksmith's proposition stands that this court must reverse. Is it your position that counsel made the decision? It's my decision. Sorry, not my decision. It's my contention that the record here establishes that defense counsel admits he never discussed it with my client. Therefore, how could my client have made the decision if she didn't even know it was an available option to her? Essentially, because People v. Brocksmith establishes that this type of decision is analogous to whether to plead guilty or not guilty, that the requirements of trial counsel be that he at least discuss with her whether she wants a lesser included instruction. And if he fails to have this discussion with her, how can she ever know that this is an available option? And I believe that the record from the evidence you're hearing is clear that that discussion never took place. And so it's your position that because no discussion took place, then counsel made the decision instead of the defendant? That's correct, Your Honor. I believe that in that moment, because my client was unadvised that this is an option she could elect to take, that essentially by trial counsel not even advancing this option through the course of the trial is defense counsel making that election as opposed to the defendant herself. Now, I recognize here that the factual distinction between the two Did counsel testify as to why he didn't discuss it with his client? I believe that with respect to involuntary manslaughter, Your Honor, the trial court attempted to allude to that in its order, where it believed that the reason it wasn't discussed is because my client had asserted her innocence since the beginning of the trial. I don't believe that that absolves the defense counsel of discussing a lesser included offense with a defendant as a part of a trial. I think that whether or not the client has asserted her innocence, it's his requirement to discuss with her these available options and let her make the choice. Why is that? Where do courts hold that? Your Honor, I believe that it's In other words, doesn't there have to be first a colorable basis for a claim of involuntary manslaughter acting recklessly before you even need to talk to your client about it? I don't think currently as the law as it stands, People v. Brocksmith specifies that it's about whether the decision was made by the defendant. Well, but that's the decision being made in the context in which there is a colorable basis to make that decision. Your Honor, interestingly enough, the case of Brocksmith and its progeny doesn't discuss whether or not the court should interpret whether the instruction should be given to make a determination about whether the decision is still the defendant's. Well, let's assume for a moment that there's utterly no basis whatsoever for a reckless claim. Then how could it be ineffective assistance of counsel for the defense attorney not to have discussed this with his client, especially given that his judgment is this can't, there's no basis to argue this to the court. And if I did, the court's not going to give it anyway and think that I'm an idiot. Why wouldn't that all be correct? Your Honor, I think it's because when People v. Brocksmith makes a parallel between these certain constitutional rights that are the defendant's alone. You didn't answer my question. And I apologize. I'm trying to set up my response, Your Honor. My response is if there's utterly no basis for a recklessness claim, how can it be ineffective assistance of counsel not to discuss involuntary manslaughter? Your Honor, I believe that Brocksmith's holding is limited and it doesn't dive into whether or not defense counsel believes that there is or isn't evidence to support. So your position is in every first-degree murder case where the jury is going to be instructed, whether there's evidence of reckless conduct or not, it's automatic ineffective assistance of counsel for the defense attorney not to discuss this lesser-than-true defense with his client. Your Honor, I believe that in people... Is that a yes? That's a yes, Your Honor. Okay. And the reason that's a yes is because in People v. Williams, the analysis that the court employs is simple. Did the record establish the decision was made by the defendant or not? If it wasn't made by the defendant, then ultimately it warrants reversal under Brocksmith. But there's a context. I just want to make sure I'm understanding. You're saying that in every first-degree murder case, lawyers must put on the record, regardless of what the nature of the offense is and regardless of what the nature of the defense may be, that they have discussed with their client the lesser-included involuntary manslaughter? No, Your Honor. I don't believe that they have to put that on the record. I think People v. Medina... Well, how else are they going to protect themselves from a claim like this? Ultimately, Judge, in this case, the defense counsel admits during the evidentiary hearing that he didn't have the discussion. So it's not a credibility determination between defense counsel and the defendant whether the discussion took place. But the discussion has to occur. I believe the discussion has to occur. Whether there's any evidence of recklessness or not. I believe that the defendant is required to be advised appropriately. That's a yes? That's a yes. Okay. And we would be the first court to so explicitly hold, would we not? Well, I think the case law infers that that's what's required under Brocksmith. We'd be the first court to so explicitly hold, would we not? That's correct. Okay. Go ahead. Counsel, let's talk about the facts in Brocksmith. Are they analogous to the facts here? No. Brocksmith's somewhat different. Certainly, in Brocksmith, the court's well aware that in that case, it was a circumstance where the defense counsel withdrew in a lesser-included offense that the defendant asserted they wanted. And in that case, it was... And there was evidence in the record as a basis for that lesser-included offense? I believe so. And ultimately, though, the Supreme Court didn't dive into the determination as to whether the evidence supported the giving of the offense. Because that really wasn't an issue. It wasn't an issue. Ultimately, in that case, it was about, was the defendant's constitutional rights protected by defense counsel? And ultimately, if the discussion didn't take place, the court held that they were not. If this... Let's assume we're back at trial. I'm the trial judge and you're a defense counsel in this case. Tell me the argument you would make for giving the instruction on involuntary manslaughter. Well, ultimately, Your Honor, part of the situation here is, in order to answer that question, I know, I promise I'm going to get there. There has to be an understanding of what the evidence was through the course of the trial. As the court is well aware, the trial court here handled very circumstantial evidence. There wasn't direct evidence as to what occurred within the Lamy home on the date of this incident. But what there was, was even in the post-conviction proceeding, a very clear indication that the defendant was not going to plead to anything. She was not accepting a possible plea to second degree. She maintained she had absolutely nothing to do with this incident. She wasn't in the room at the time this happened. She was not involved in any way and maintained that throughout the trial. And that is correct, Your Honor, but I think there's a distinction between advancing an opportunity to be found not guilty on everything versus advancing alternative theories. So I'm the trial... Go back to my hypothetical. I'm the trial judge and you say, gee, I want the jury instructed on involuntary manslaughter. I say, well, counsel, doesn't there have to be some evidence of recklessness in order for that instruction to be given? And you would say what? In this case, Your Honor, I do believe there was evidence of recklessness. What was it? The reason is, is the circumstantial nature of the case rests on the fact that the state really only presented three particular issues. The first, that Heather Lamy was the only adult within the Lamy home on that particular date. Second, that there was a text message exchange which showed an increasing level of frustration between my client over the minor child. And three, that experts testified that the injuries could not have been self-inflicted here. However, I've cited People v. Hamilton to kind of address the issue that the court is bringing up. In People v. Hamilton, that case was circumstantial as it relates to the mental state of the defendant at the time the offense was committed. And the Illinois Supreme Court held that because there was no direct evidence of what the intent was of the defendant, because the state couldn't prove that, then in that case, the defendant was entitled to the lesser-included instruction of theft. I would submit that's exactly the situation here. That because the state cannot submit direct evidence as to what happened within the home, nor what mental state my client would have been under at the time. Is there any murder case you can cite? We've got lots of murder cases where, in the absence of any evidence of recklessness, it was argued that the jury should get an involuntary manslaughter instruction and some court of review held it was error not to so instruct. I found no such case, Your Honor. Certainly, if I had, I would have included it. Well, if I'm the trial judge, again, my thinking is, well, gee, the law's pretty clear. There's got to be some evidence, just some evidence of recklessness. What evidence do we have of recklessness in this case? The argument you just made is the absence of guilt. She didn't perform the acts which caused the death. Your Honor, what I said, or what I attempted to say, perhaps inartfully, was that the issue there is that the state can't prove that her mental state at the time the offense was committed was with knowledge that it would cause a strong probability of bodily harm or death. Whereas, those same exact acts could have been done at the right time. How old was the child? The child, I believe, was four, Your Honor. And the kinds of injuries the child suffered, your argument is, well, assuming the defendant inflicted those injuries upon the child, that could have been recklessness or inadvertence somehow? Yes, Your Honor. I think that because the evidence was circumstantial, nobody knows what the manner or mode of those injuries were. We know that an expert... We know what their extent was. We know that the injuries ultimately led to her death pursuant to the conclusions made by those experts. But as to the manner or mode that those injuries were inflicted upon the minor child, nobody can testify to that fact. Because nobody can testify to that... But didn't the expert witnesses testify as to the nature of the blows that would have had to have been struck to cause these injuries? I believe that in this case... Which of those blows were conducive to a finding of recklessness? Your Honor, in even using the word blows, I think is potentially a problem. We don't know whether it was blows or a blow that ultimately resulted in this death. Because of that, we don't know whether this was a sudden outburst based upon something outside of the record that nobody knows where the client reacted and ultimately caused the death of this minor child. But your client is maintaining that she was not in the room at the time this occurred. She had nothing to do with this. The attorney argues that she was not involved. She did nothing. Not that she did something, but it maybe got out of hand. The claim was at trial. She was not involved in this. She has no idea how this happened. In fact, the defense theory was that this kid threw herself down so violently that she caused all of this herself. Because she had this history of banging into things and falling down on things and hitting her head on a church pew. Isn't that what the evidence was? That's correct, Your Honor. But ultimately... So your client is saying, I have nothing to do with this at all. You're the lawyer. You've already gone to her with a second degree plea. And she says, absolutely not. I'm not pleading to anything. I did not do anything. And then at the closing argument, the attorney argues, she was not involved. We have no idea how this happened, but she didn't do anything. You're saying, under that set of facts, if he doesn't talk about involuntary, now that she's already turned away a second degree, then he's ineffective. Yes. Well, first, I'd like to distinguish between whether it's ineffective or whether, essentially, it's per se a violation of her rights under Brocksmith. I think that Brocksmith, as held in Williams, establishes that if the record is clear the discussion didn't take place, it's a per se violation and the court must reverse. We move on. In fact, in that case, they said, we don't even analyze the inefficiency issue whatsoever. And that's the position I'd ask this court to take. With respect to Your Honor's question, certainly there's case law cited to, and it might be my reply brief or my open brief, where it's a well-established principle that a defendant can go to trial to seek to be found not guilty of everything and ask for a lesser included instruction as an insurance plan, even if those are inconsistent theories. Yes, but doesn't there have to be some evidence to support the lesser included instruction? Assuming this court disagrees with the prior argument or proposition I've taken regarding Williams and agrees with the trial court that there must be some evidence, then ultimately I believe there was some evidence, as I was citing to Your Honor. In this particular instance, though, that evidence can be contradictory. It can essentially allow somebody to reject a second degree murder plea so they can have the option of being found not guilty of everything. To say that because she rejected a second degree murder plea, that explains that she wouldn't have wanted any other instructions doesn't make sense under the circumstances. Reason being is to accept that plea eliminates her ability to exercise her right to trial and be found not guilty of everything. So certainly there's a large difference between requesting a lesser included defense instruction be given to the jury and a situation where I don't even know it's an option to go to trial and be found not guilty of everything. Additionally, I think that a difference in this particular case is that my client testified during the course of the evidentiary hearing that as the trial proceeded, she realized the trial wasn't going as well for her as she would have liked. I think that that's exactly the scenario why someone can make the election to have a lesser included instruction at the point in time that they're giving jury instructions. Because you can go to trial and ultimately see that the evidence isn't going the way you would like and make that decision at that point in time. And until the jury instructions are finalized and given to the jury and at closing arguments, you're not foreclosed from making that request. She's the first defendant in hindsight who says now about a post-conviction proceeding, gosh, you know what, if I would have known this, I probably would have done something different. Well, I don't know about other post-convictions, Your Honor. I'm assuming by the tone the court is calling into credibility that particular assertion. I think the difference here is that both my clients and trial counsel agree that that discussion never took place. So how could she have been in a position to say I want something that she didn't even know was an option for her? Your Honors, I believe that her testimony is unimpeached by defense counsel as it relates to both involuntary manslaughter and second degree. Now, I started to suggest that the facts around second degree are somewhat different. But in this particular case, the defense attorney states he had a conversation with my client in a room where her family was present. That he believed that the consensus walking out of that room was that second degree murder was not going to be requested. However, when we attempted to further delve into that, defense counsel wasn't able to testify to some affirmative representation from my client that it was her decision not to request that second degree murder instruction be given. In fact, he said he couldn't be 100% sure that she even understood. So when my client testifies unimpeached at the evidentiary hearing that she doesn't recall it being explained that she could ask for a second degree murder instruction, then ultimately at that point her testimony is unimpeached and under Brocksmith this court should reverse based upon either involuntary or second degree murder. I apologize, Your Honor. What would be the basis of a request for a second degree murder instruction in this case? Your Honor, similar to talking earlier about the evidence that they have, which doesn't directly prove the mental state of the defendant during the commission of the offense. Similarly, there's a gap in time between when the last text message was sent and when 911 call was ultimately made where nobody knows what happened. And ultimately an inference can be drawn from the absence of that evidence that something could have happened. Like sudden provocation from the 4-year-old perhaps? Yes, Your Honor. Certainly at that point we don't know what could have happened. Any sudden provocation cases from 4-year-olds justifying second degree murder? Not from 4-year-olds, Your Honor, no. It's a 4-year-old involuntary, isn't it? That's correct, Your Honor. So sudden provocation then wouldn't apply? Sorry, Judge? Sudden provocation wouldn't apply? I believe it does apply. Okay, so we've got a 4-year-old providing the provocation justifying an unreasonable belief in self-defense. Is that what you're arguing? My argument there is that we don't know what happened from when the text message exchange ended to the 911 call. Give me the most radical scenario you can imagine that would explain sudden provocation as justifying a second degree murder case with regard to the killing of the 4-year-old here? Your Honor, I don't have a hypothetical for the court. And I think to require the defendant to present evidence in this juncture where it's based on the absence of evidence from the state ultimately shifts that burden onto her in this circumstance. Well, in fact, there is a burden upon her on second degree murder, isn't there? And what I was starting to suggest, Your Honor, is that because of the courts holding in People v. Hamilton where the absence of a mental state could just as likely prove a lesser mental state then it's under those circumstances that the lesser included offense should be given. Counsel, I'm sorry you're out of time. I apologize. Did you have another question? No, it's okay. Okay, you'll have more time on rebuttal. Thank you. Mr. McNeil. May it please the Court, Counsel. First, as for Brocksmith and Medina and their progeny, those are actually the facts of those cases where defense counsel submitted lesser instructions, not refused to submit, either without consulting his or her client or with his or her client's direct expressed disagreement. Clearly, extending Brocksmith to situations such as this, Your Honors sort of stole my thunder. I was going to make the bold declaration that this would be the first court to so hold, but you guys already recognized that point. Mr. McNeil, what about the notion of requiring the defendant to demonstrate that there is some evidence to support the lesser included offense instruction? That's the easiest way to dispose of the ineffective assistance argument here. I would also submit that there was no per se reversible argument at this evidentiary hearing. This was posed as an ineffective assistance of counsel argument. As to that ineffective assistance, the trial court specifically noted that had these instructions been given, they would have been rejected. And that was the proper finding by the trial court. State of mind is almost always proved by circumstantial evidence. It's hard to find cases where somebody says, I'm knowingly doing this or I'm intending to do this or I am recklessly doing this. It's almost always proven by circumstantial evidence. That's why we have People v. Perry, I cited in my brief, as two factors directly applicable to this case, whether a defendant acted recklessly and whether an involuntary manslaughter instruction is appropriate. Those include the disparity in the size and strength of the victim, the brutality and duration of the beating, severity of the victim's injuries and whether the victim was defenseless. All of those weigh heavily in favor of rejecting an involuntary manslaughter instruction in this case. And we know specifically as to this case that that's exactly what the trial court would have done because they stated that in their evidentiary in rejecting defendant's post-conviction claims in its evidentiary hearing findings. So clearly that's the easiest way to dispose of the lesser charges instruction. As to the second degree murder instruction, we have specific testimony from defense counsel that defendant indicated she did not want a second degree murder instruction given. It only follows and it makes all the sense in the world that she would not want an involuntary manslaughter instruction given because this would completely undermine and contradict the whole defense theory of the case. I cited Morrow and White. I want to point out Morrow is not an unpublished order. For some reason there is a U after it in the ILAP site. I think it's a typo. There's a northeastern third citation. It's clearly a published opinion. That case is also applicable here. Again, it was for second degree murder, but they stated defendant testified in his own defense that he did not shoot the victim and he was not even present during the commission of the offense. At that point, the decision whether to request a second degree instruction and thus give the party a compromise point short of a full acquittal became part of the trial strategy. That's almost exactly the situation we have here. Defendant did testify on her own behalf. She stated she had nothing to do with this. She did not touch the victim on the day that this incident happened and White the other first district case appellate court held likewise and they stated even if we assume there was enough evidence to support a self-defense instruction defense counsel may have concluded that a self-defense theory would have been incompatible with the theory presented since it would require defendants to admit to the shootings. Here, it was a matter of trial strategy of the utmost importance because this, even if we it's not an admission by defendant, but it's an implicit admission if they give the involuntary manslaughter or second degree instruction. Is this the second appeal in this case? Yes, there was a direct appeal. There's a direct appeal and what issues were raised in that case? Sufficiency of the evidence and effective assistance of trial counsel prosecutorial misconduct, I think or improper closing argument. Subsequently, the defendant filed a post-conviction petition and the trial court conducted a hearing on it, denied it, and this is the appeal from that. Correct. And in this appeal the defendant raises the issue of the consideration by the trial court of improper factors in sentencing. Yes. Can you address that on the merits? There was a re-sentencing in this case. There was a what? The defendant was re-sentenced after the direct appeal. She was first sentenced to natural life and there was a re-sentencing which is why this is the first proceedings where the re-sentencing has been argued. This argument was improper factor in the re-sentencing. Improper aggravating factor. So, this is a combined appeal and in fact post-conviction petition denial and... Procedurally it is strange. Because procedurally we don't the defendant has no right to raise improper sentencing factors and appeal from the now post-conviction petition. Yes, I guess it would be combined in the... That's not a case of judicial efficiency. It's not a constitutional issue. Is it? As far as post-conviction proceedings? Yes. I mean it would be forfeited had this been the first sentencing hearing. I assume obviously it would be already happened, but this happened in between the direct appeal and this post-conviction. So, in any event, you're saying let's address it on the merits of... Well, it's... Which you do. For the sake of judicial efficiency, sure. Okay. If you if your honors want to dismiss it procedurally that's fine with me also, but clearly it's a improper it wasn't an improper aggravating factor it was not an aggravating factor at all. It wasn't... The trial court even specifically clarified it was not considering the husband's text messages as substantive evidence, and it's hard to even fathom how it could be prejudicial to defendant. It just went to whether she conducted this beating on the victim based on a suggestion from her husband or whether she was just frustrated because the victim  or what. It's hard to fathom how that would be improper aggravating a factor even assuming the trial court used it as substantive evidence either at trial or in sentencing. In any event the trial court properly clarified its own statements at the motion to reconsider of resentencing and as for the ineffective assistance the only other argument are the potential witnesses the trial court or the defense council gave multiple sound reasons for not calling these witnesses. Breanna she was only 5 years old at the time of the trial the defense council considered her a baby that was his exact words she testified at this evidentiary hearing she could not even remember going through the trial so clearly this was a risk especially since she gave a prior recorded statement that was inconsistent, could be used for impeachment, and defendant specifically told counsel she didn't want any of other children involved. Those are all sound reasons and not objectively unreasonable reasons for not calling Breanna the other witness was Miss Greer she would have only testified to hearsay statements provided to her by defendant trial court correctly noted that those would have been inadmissible hearsay anyway and cumulative Johnson and Anstrom neither of them filed an affidavit, neither of them testified at the evidentiary hearing the only claims we have as to what those witnesses would have testified to were from the defendant herself and of course trial court was in the best position to evaluate the credibility of the defendant at that evidentiary hearing they had no obligation to believe her testimony at all, at any rate even if those two witnesses testified to exactly what she stated they would, it was clearly cumulative it was before the jury that Kiana fell at church the week before that was clearly before the jury it was refuted by the state's forensic pathologist medical expert witness that testified this could not have been as a result of self-harm and those witnesses would not have changed the outcome of the trial so both prongs of Strickland fail for both of the ineffective assistance arguments and the trial court did not manifestly err in finding that there was no ineffective assistance of counsel and if there are no more questions I would ask this court to affirm. Thank you counsel Mr. Rieker any rebuttal? Yes Your Honor May I proceed? Yes. Thank you Your Honor, Mr. McNeil just referenced in response to Your Honor's question about not wanting the second degree murder instruction and it was his assertion to the court that the record establishes that my client did not want a second degree murder instruction. I wish to clarify what I believe the record shows and I know that the record will speak for itself as I stated in my opening remarks the evidence around the discussion about second degree murder here does not establish that my client made the decision not to request a second degree murder instruction. Rather the evidence shows that there was some discussion where my client was present in a room with a lot of her family and defense counsel wasn't able to state that she affirmatively made the decision not to request the second degree murder instruction Well I'm evaluating in effect the assistance of counsel isn't a requirement that you show prejudice from the decision or the action or whatever it is you're complaining of the counsel needs or lack of action? Your Honor I think that as in People v. Williams the context of that appeal was that the court didn't go any further in the inefficiency issue Counsel, I think the question I asked calls for a yes or no first before you give your explanation I would say no, Your Honor So there's no requirement that you have to show prejudice I would say no. I would say that inherent in them not discussing this with the defendant at all is the deficiency and the prejudice. So Strickland has no prejudice requirement? Your Honor, at least in the courts holding in People v. Williams I believe that the court doesn't even get to that finding. It essentially holds that it's a per se violation and that's what I've argued in my opening brief To the extent that this court believes that there does need to be a showing of prejudice that's when we would further analyze that issue Of course, I'm inserting to the court that I believe you should adopt the holding of People v. Williams here. To the extent the court requires us to go further, I think that the record doesn't show that my client made the decision about second degree and certainly to the extent that Mr. McNeil argues that the evidence here Mr. B. Williams was a first district case That's correct, Your Honor Is that binding upon us? Your Honor, I believe that certainly because of the nature of this case Does that call for a yes or no answer, Counsel? I'm catching a theme, Judge and I apologize, I promise So, is it binding upon us? Your Honor, I believe it is binding under these facts circumstances. I believe that As a matter of law, are decisions of the first district binding upon us? Your Honor, I believe that this is one appellate court and that if the fourth hasn't dealt with this particular issue then the first district So, your answer is it's a binding decision upon us and we have to follow it even if we find it not well decided? Yes, Your Honor And what's your authority for that, Counsel? Your Honor, I believe, and I don't have a statutory citation, certainly I'm glad to file a supplemental brief if the court would require is that because this is one appellate court despite the fact that we are broken into separate districts, that if the first has sounded on an issue that the fourth has not then ultimately we should follow what the first district has held. And in this particular instance, Your Honor, I also would like I thought that's what they called persuasive authority Apologize, Your Honor? I thought that's what they called persuasive authority Well, certainly if it wasn't factually similar enough to our case or something that would make it binding, then it could be persuasive Your Honor, but I think in this situation because that court specifically held that if the record is clear the discussion didn't take place, then we reverse under Brocksmith without going further and that's exactly what we're dealing with here, then I think it is binding on this court's determination here today Your Honors, I think it's also important to note that in this situation, that People v. Brown is something that needs to be addressed for purposes of this second degree discussion In Brown, this court, the fourth district held that it can't be determined that someone acted knowingly upon advice of counsel about requesting a lesser instruction if they were under a misapprehension about what their sentencing range was Your Honor, asked about the resentencing that happened in this case in the post-conviction hearing, I believe defense counsel admits that he was under a misapprehension of the sentencing range my client was to face upon a conviction for first degree murder and that he admitted that that was advice he provided to my client, and my client similarly testified that that was her belief prior to the resentencing hearing In this case, how can it be determined that my client made a knowing election about to request an instruction if she's under a misunderstanding or misapprehension about what the sentencing range would even be in the event she was to be convicted or one or more of these offenses The argument about the trial court allegedly considering improper factors is not normally something which is justiciable in a post-conviction petition or an appeal from the denial, is it? Your Honor, I think that the court can consider this for the judicial efficiency of how this was handled. Certainly in this case, appropriate motions to reconsider were filed to delay the timely filing of an appeal and because those motions were filed my client adequately preserved her issues under the post-conviction petition We knew at that point that there was a resentencing that was going to happen May I proceed, Your Honor? You can finish your sentence Thank you. Because we knew that the resentencing hearing was going to take place anyway, we chose to proceed to one appeal as opposed to potentially have this court hear it multiple times. Thank you Thank you, Counsel. This matter will be taken under advisement. We'll be in